# In the United States Court of Federal Claims

No. 07-306T
(Filed December 20, 2007)

* * * * * * * * * * * * * * * * * * * * * * *
**JOYCE A. RINEER,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.
* * * * * * * * * * * * * * * * * * * * * * *

Trust fund recovery penalty, 26 U.S.C. § 6672; motion to suspend proceedings.

*Lawrence R. Jones, Jr.*, Townsend & Jones, L.L.P., Dallas, Texas, for plaintiff.

*Jennifer P. Wilson*, Court of Federal Claims Section, Tax Division, Department of Justice, with whom were *Richard T. Morrison*, Acting Assistant Attorney General and *David Gustafson*, Section Chief, all of Washington, D.C., for defendant. *Mary M. Abate*, Assistant Section Chief, Washington, D.C., of counsel.

## ORDER

Plaintiff Joyce A. Rineer filed this suit in our court on May 17, 2007, seeking the refund of money she paid to partially satisfy a trust fund recovery penalty imposed under 26 U.S.C. § 6672. After obtaining an enlargement of time in which to respond to her complaint, the government filed a collection action in the United States District Court for the Northern District of Texas. *See* Ex. to Def.'s Mot. for Suspension (Compl., *United States v. Rineer and Washington*, No. 3-07CV1454-L (N.D. Tex., Aug. 23, 2007)). The district court action seeks to collect, from Ms. Rineer and another allegedly responsible person, Ms. Rose Washington, the unpaid balance of a trust fund recovery penalty springing from the failure to pay federal income and social security taxes for employees of two businesses in 1997 and 1998. *See* Def.'s Mot. for Suspension ("Def.'s Mot.") at 1. The $759 refund sought in our court apparently relates to the payment of one quarter's worth of taxes withheld for one employee of one of the businesses. *See* Ex. A to Compl. (Form 843). The week after filing the district court action, in lieu of an answer the government moved to suspend proceedings in this court until the collection action is

concluded. *See* Def.'s Mot. at 1. Plaintiff opposes this motion, *see* Pl.'s Resp. at 2, thus necessitating this order.

Section 6672 is invoked when an employer has not paid over to the government the federal income and social security taxes withheld from its employees' paychecks. Under the section, "[a]ny person required to collect, truthfully account for, and pay over" these taxes, "who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof" can be assessed "a penalty equal to the total amount of the tax" not paid. 26 U.S.C. § 6672(a). This penalty may be imposed on multiple persons, including officers or employees of corporations and members or employees of partnerships, provided that each person was "under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b); *see Slodov v. United States*, 436 U.S. 238, 244-45 (1978). Although multiple persons may be jointly and severally liable for the full amount of the taxes not paid, the government is only entitled to collect penalties equivalent to 100 percent of the taxes owed. *Schultz v. United States*, 918 F.2d 164, 167 (Fed. Cir. 1990).[1] A person from whom is collected more than her proportionate share of the tax penalty has the right to recover the excess amount from the other responsible persons, in a separate action. 26 U.S.C. § 6672(d).

Based on the refund claim which Ms. Rineer submitted to the Internal Revenue Service, incorporated into the complaint by reference, Compl. ¶ 7, it appears that plaintiff and Ms. Washington started two health care businesses bearing the name "Specialty Care" -- the first was a temporary nurse staffing business and its offshoot was a Joint Commissioned Accredited Home Health Agency serving homebound Medicare patients. Ex. A to Ex. A to Compl. ("Att. to Refund Cl.") at 1-3.[2] Plaintiff contends that the manner in which the government administered the Medicare program caused financial difficulties for her home health agency, which ultimately spread to the staffing business and resulted in both businesses failing. *Id.* at 3-8. Because reimbursements were often delayed, were usually reduced to amounts less than the costs incurred, and could only be appealed through a backlogged process -- while the government's recovery of what it deemed to be overpayments occurred in real time -- taxes, as well as other debts, could not be paid. *Id.*

---

[1] The government's contention that it is IRS *policy*, rather than *the law*, which limits it to collecting no more than an aggregate penalty equal to 100 percent of the tax owed, Def.'s Reply at 2 n.1, is thus contrary to the law of the Federal Circuit. Moreover, the contention that the government could "[t]heoretically" collect the full penalty from every responsible person, *id.*, is flatly contradicted by the concept of a responsible person's "proportionate share," which is the basis for 26 U.S.C. § 6672(d).

[2] From this information and the allegations in the district court case, the Court surmises that the staffing business was called Specialty Care, Enterprises, and the home health agency was Specialty Care, Inc. *See id.* at 3; Ex. to Def.'s Mot. ¶¶ 7-10.

On April 7, 1999, the unpaid employment taxes for the two businesses resulted in IRS assessments of trust fund recovery penalties against both Ms. Rineer and Ms. Washington. *See* Ex. to Def.'s Mot. ¶¶ 7-10. Against each, a penalty of $492,980.84 was imposed for taxes withheld from employees of Specialty Care, Inc. for the third quarter of 1997 through the fourth quarter of 1998. *Id.* ¶¶ 7, 9. And both were assessed a penalty of $89,347.71, corresponding to the unpaid employment taxes withheld from the pay of Specialty Care, Enterprises employees for the third and fourth quarters of 1997. *Id.* ¶¶ 8, 10. In December 2006, Ms. Rineer submitted to the IRS a claim for refund and request for abatement, presumably within two years after the trust fund penalty of $759.00 was collected from her. Compl. ¶¶ 3, 7. Plaintiff argued that she cannot be considered a responsible person liable for the trust fund recovery penalty because the failure to pay over the taxes was not willful. Att. to Refund Cl. at 8-9. Rather, she contended that the government's administration of the Medicare program was to blame. *Id.* at 3-8, 12. Her refund claim was disallowed by the IRS on February 28, 2007, Compl. ¶ 7, and the present refund action followed.

The government has moved for this Court to stay its hand, so that the collection proceeding subsequently initiated in the district court can resolve the question of Ms. Rineer's liability as well as that of Ms. Washington. Because of the nature of our forum -- designed, after all, so that citizens may bring claims against the government, and not vice-versa (except for counterclaims, of course) -- the government cannot seek to collect the penalty from Ms. Washington in this case.[3] The motion is thus pitched on the ground of judicial efficiency, as suspending this proceeding in favor of the collection action "will ensure that only one trial will be required." Def.'s Mot. at 2.

As our (and the Federal Circuit's) predecessor recognized, this situation presents "a venue type problem." *Allen v. United States*, 225 Ct. Cl. 555, 558 (1980). It is not infrequently the case that multiple actions involving identical or substantially similar issues are filed in more than one forum in our federal courts system, raising questions of judicial administration. Refuge is often found in the so-called "first-filed" rule, which while neither absolute nor mechanically applied, advances "'the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue.'" 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 111.13[1][o][ii][A] (3d ed. 2007) (citation omitted). Analogously, when a court weighs the appropriateness of a transfer of venue under 28 U.S.C. § 1404(a), "[a]s a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless . . . other factors . . . weigh substantially in favor of transfer." *Id.* ¶ 111.13[1][c][i].[4]

---

[3] Because this case does not involve the recovery of money paid by the United States to a third party, the summons provision of Rule 14(a) of the Rules of the United States Court of Federal Claims ("RCFC") is not applicable.

[4] Incidentally, the Fifth Circuit -- where the collection action was filed -- generally follows the first-filed rule and allows plaintiffs their choice of forum. *See*, *e.g.*, *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (explaining the first-filed rule); *Mann*

The court with jurisdiction over the first-filed case may exercise its discretion to stay proceedings, under "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). And, as the government notes, on several occasions our court has stayed cases in favor of subsequently-filed actions to collect penalties assessed under section 6672, based on considerations of judicial efficiency or economy. *See Walker v. United States*, 43 Fed. Cl. 519, 521-23 (1999); *Klein v. United States*, 31 Fed. Cl. 614, 616 (1994); *Caparco v. United States*, 28 Fed. Cl. 736, 737-39 (1993). The Court concludes, however, that in the circumstances presented by this case, the potential for economy is diminished and is outweighed by other considerations relating to the interest of justice, including the plaintiff's right to choose the forum in which to litigate her refund claim.

The government's motion rests on the assumption that a collection action against both Ms. Rineer and Ms. Washington is more efficient than the refund action brought here, as the presence of both allegedly responsible persons would allow the matter to be resolved with only one trial. But this assumption ignores the nature of plaintiff's claim. If this case were to proceed to conclusion and Ms. Rineer were to succeed, she would have demonstrated that the failure to pay the withheld taxes was not willful due to Medicare's reimbursement policies. Plaintiff's theory of non-liability is not specific to her but instead attempts to excuse the failure to pay taxes at the firm level -- distinguishing this case from the more typical section 6672 scenario, in which fingers are pointed at other potentially responsible persons and not at the government. *See*, *e.g.*, *Godfrey v. United States*, 3 Cl. Ct. 595, 605 (1983), *rev'd*, 748 F.2d 1568 (Fed. Cir. 1984). Because this theory, if successful, would seemingly show a lack of willfulness on the part of *any* potentially responsible person, a second trial involving Ms. Washington would be the result not of plaintiff's choice of this forum, but rather of defendant's choice to obtain a second opinion.[5]

---

*Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (stating the first-filed rule should be followed absent "compelling circumstances"); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) ("[T]he plaintiff is generally entitled to choose the forum.").

[5] This assumes that collateral estoppel could not be used defensively by Ms. Washington against the government in the collection action. *Cf. United States v. Mendoza*, 464 U.S. 154, 162-63 (1984) (holding that nonmutual *offensive* collateral estoppel did not apply against the government). The Federal Circuit, however, has recently left open the question whether nonmutual defensive collateral estoppel is indeed available against the government, *see In re Trans Tex. Holdings Corp.*, 498 F.3d 1290, 1298 n.7 (2007), and it does not appear that the Fifth Circuit has spoken on the subject. In at least one section 6672 collection action, a defendant was able to defensively use collateral estoppel to prevent the government from relitigating issues decided in the trial of other responsible persons. *See United States v. Musal*, 421 F. Supp. 2d 1153, 1159 (S.D. Iowa 2006), *aff'd sub nom. Ferguson v. United States*, 484 F.3d 1068 (8th Cir. 2007).

On the other hand, were the government to bring its counterclaim in this forum and prevail, it could impose the entire penalty on Ms. Rineer, and, in effect, deputize her to collect from Ms. Washington the latter's proportionate share. *See* 26 U.S.C. § 6672(d). The burden of the subsequent litigation, however, is none of the government's concern. Thus, but for the government's choice to bring the collection action against Ms. Rineer in another court, the only outcome which would require a second trial involving *the government* would be if plaintiff were to both lose the action in our court and be found judgment proof.[6]

The Court has some doubts as to whether it is appropriate to suspend proceedings based on speculation over the plaintiff's ability to pay a trust fund recovery penalty, or on the assumption that the plaintiff will lose. Perhaps a court could more comfortably conclude that a stay is warranted when the number of *additional* responsible persons present in a collection action is greater than the number already litigating the issue before it -- as the government's prospect of recovering the penalty, were it to prevail, is significantly increased. The Court notes that this is precisely the situation in three of the four reported cases relied upon by the government. *See Allen*, 225 Ct. Cl. at 556 (involving five defendants in the collection action compared to two plaintiffs in our predecessor court); *Walker*, 43 Fed. Cl. at 520 (three versus one); *Caparco*, 28 Fed. Cl. at 737 (four versus one). But the present motion seeks to suspend proceedings in favor of a district court collection action against just one additional person -- a person who, as of this date, has failed to timely respond to the complaint and appears likely to default. Under these circumstances it is debatable whether the collection action's expected value to the public fisc would even exceed that of a counterclaim in this lawsuit, and the Court certainly cannot find that the marginal value of the former is sufficient to outweigh the plaintiff's choice of forum for her refund claim.[7]

Other considerations relevant to the interest of justice militate against a suspension of proceedings. First, given the gaps in our jurisdiction under the Tucker Act, 28 U.S.C. § 1491 -- no tort actions, few declaratory judgment actions, no supplemental jurisdiction, etc. -- it is not uncommon for our cases to have parallel actions in a district court. *See*, *e.g.*, *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1173 (Fed. Cir. 1994); *Young v. United States*, 60 Fed. Cl. 418, 420–21 (2004). Judicial economy is thus absent by design of Congress, suggesting that this factor should be downgraded

---

[6] That is, assuming the government would still be willing to allow the issue regarding Medicare's reimbursement policies to be tried in just one forum when that forum is our court, and not the district court. As noted above, it is not clear that defendant would even have this choice. *See supra* note 5.

[7] This low marginal value can also be inferred from plaintiff's insistence on staying in her selected forum, although the presence of the other potentially responsible person as a party would make it easier for her to split the burden of the penalty were she to lose (by possibly avoiding a separate suit for contribution). The Court notes that Ms. Washington need not be a party to participate as a witness in this case. *See* RCFC 45.

in importance when the question is whether citizens should be deprived of the forum created specially to hear their claims.

Second, the Court notes that while the government filed its collection action with some dispatch relative the plaintiff's lawsuit, the penalty was assessed *more than eight years earlier*. If avoiding the possibility of two separate trials concerning the Specialty Care trust fund recovery penalties were truly important to the government, this could have easily been accomplished by simply filing the collection action first, at any time in the preceding eight years. The government instead waited until after a refund action was filed by one of the allegedly responsible parties. If this were a common practice of the government, and provided that the choice of forum is important to the taxpayers, a stay may well be counterproductive to collection efforts in the long run -- as it might deprive potential plaintiffs of the incentive to raise the issue in the first place, thereby keeping the penalty assessments off the government's radar screen.

This leads directly to the final consideration. The Court notes that the situation presented in this case will not recur much longer due to 26 U.S.C. § 6331(i), added to the tax code as part of the "Taxpayer Bill of Rights 3" title of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 726, 759. Under this provision, while facing a refund suit for section 6672 penalties filed in our court, the government will no longer be able to file a collection action against the refund claimant in another court. The government would either have to file a counterclaim here, or wait until this proceeding ends before filing elsewhere. 26 U.S.C. § 6331(i)(4)(i). In either event a stay would no longer be a practical option, and collection efforts against other potentially responsible parties would necessarily require a second proceeding. The provision does not govern this case, as the tax liabilities upon which Ms. Rineer's penalties are based were incurred in periods beginning before December 31, 1998. *See* § 3433(b), 112 Stat. at 760. But it does reflect the preference of Congress to preserve the taxpayer's selection of forum, even at the cost of judicial economy.

For the foregoing reasons, the government's motion for a suspension of proceedings is **DENIED**. The government shall file its response to the complaint within fourteen days of the date of this order.

**IT IS SO ORDERED**.

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge